Stephen L. Martino, Executive Director Kansas Racing and Gaming Commission 700 SW Harrison, Suite 420 Topeka, Kansas 66603
Dear Mr. Martino:
You inquire whether Sections 31 and 48 of the Kansas Expanded Lottery Act[1] (KELA) prohibit a state legislator and a member of the governing body of a city where a racetrack gaming facility (racino) is located from serving on the board of directors of an organization licensee. An organization licensee is a nonprofit organization licensed by the Kansas Racing and Gaming Commission (Commission) to conduct races pursuant to the Kansas Parimutuel Racing Act (Racing Act).[2]
The KELA authorizes lottery gaming facilities (casinos) in four areas of the state and the placement of electronic gaming machines (slots) at racetrack facilities owned or managed by parimutuel licensees. KELA establishes the framework for this venture which imposes responsibility on the Commission for oversight and regulation of both casinos and racinos.
Section 48 amends the Racing Act to make it a class A misdemeanor for a state legislator to hold any paid position with: (1) a facility manager licensee;[3] (2) a facility owner licensee;[4] or anorganization licensee or to have any financial interest, directly orindirectly, in any racetrack facility within the state ofKansas."[5]
You advise that a state legislator has been a member of the board of directors of an organization licensee since 1995 but receives no compensation for his services to the board. As the Racing Act has always precluded board members from having a financial interest in a racetrack facility,[6] we assume, for purposes of this opinion, that the state legislator, in question, has no financial interest,[7] directly or indirectly, in any racetrack facility within the state of Kansas.
"Paid position" is not defined in the KELA nor does the legislative history illuminate its meaning but the commonly understood meaning[8]
of "position" is "a post of employment; job."[9] Whether or not a person holds a "paid position" with an organization licensee will depend upon the facts but, clearly, compensation is required to trigger criminal liability. In any event, it is our opinion that a state legislator who is not compensated for his or her services as a board member does not violate Section 48.
You also inquire whether Section 31 of KELA[10] prohibits a state legislator and a member of a city governing body where a racino is located from serving on the board of an organization licensee.
Section 31 prohibits certain state and local officials from involvement in casinos and racinos. State legislators and members of city governing bodies where a racino is located are included in the laundry list of prohibited individuals.[11] In addition to the state legislator who serves on the board of an organization licensee, you indicate that a member of a city governing body where a racino is located also serves as a member of the same board.
Specifically, Section 31 prohibits the specified individuals from (1)holding, directly or indirectly, an interest in a lottery gaming facility or racetrack gaming facility or any lottery gaming facility manager or racetrack gaming facility manager; (2) being employed by a casino/racino or its facility manager; (3) representing or appearing on behalf of a casino/racino or its facility manager; (4) negotiating on behalf of any person submitting a proposal for a casino/racino; (5) soliciting or accepting any complimentary service or discount from a person submitting a proposal for a casino/racino which the individual knows is not offered to members of the general public; or (6) influencing, by use of official authority, an investigation or decision of the Lottery or Racing and Gaming Commissions regarding a proposal for a casino/racino. Willful violation is a class A misdemeanor.
Whether or not a state legislator or a member of a city governing body where a racino is located violates Section 31 will depend upon the facts. However, in determining whether a board member has an "interest" in a racetrack gaming facility or a racetrack gaming facility manager (racino manager) by virtue of his or her board membership with an organization licensee, it is helpful to understand the relationship between an organization licensee and a racino manager.
A racino manager is a facility manager licensee certified by the Kansas Lottery to offer slots at a racino.[12] Both an organization licensee and a facility manager licensee play a role in effectuating parimutuel racing and, now, expanded gaming by way of slots being allowed at racetracks. An organization licensee conducts horse and/or greyhound races but contracts with a facility manager to operate the racetrack facility.[13] Both licensees stand to benefit financially from the endeavor.[14] With the advent of expanding gaming, it is anticipated that a facility manager will contract with the Kansas Lottery for placement of slots at the racetrack facility[15] which will, in turn, generate revenue for both the organization licensee and the facility manager/racetrack gaming facility manager.
The question is whether the prohibited individuals identified in Section 31 who serve on a board of an organization licensee hold, "directly or indirectly, an interest" in a racetrack gaming facility or a racetrack gaming facility manager by virtue of the facility management contract between the organization licensee and the racino manager.
As indicated previously, board members of organization licensees have always been prohibited from having a "financial interest" in a racetrack facility.[16] "Financial interest" is defined in the Racing Act as "an interest that could result directly or indirectly in receiving a pecuniary gain or sustaining a pecuniary loss as a result of ownership or interest in a business entity or activity or as a result of a salary, gratuity or other compensation or remuneration from any person."[17]
"Interest" as used in Section 31 is not defined in KELA but the generic definition is "the object of any human desire; especially, an advantage or profit of a financial nature; a legal share in something.[18]
In reviewing the legislative history of Section 31, we note that the verbiage is identical to that of a prior gaming bill, 2006 S.B. 587, that did not pass. A previous version of S.B. 587 prohibited certain state officials from having a "financial interest, directly or indirectly in . . . any racetrack gaming facility manager."[19] When S.B. 587 reached the Senate floor, it was revamped to include the verbiage that now appears in the current law.
According to the Revisor of Statutes, the language of Section 31 was taken nearly verbatim from a comparable "conflicts of interest" provision in the New Jersey casino licensing statute.[20] Unlike the KELA provision, however, New Jersey defines "interest" in terms of a state official having ownership or control of the profits of an applicant or holder of a casino license.[21]
In light of the prior versions of Section 31 prohibiting state officials from having a "financial interest" in a racetrack facility or its manager and the fact that the current law was spawned from a New Jersey law that defined "interest" in terms of financial considerations, we can only surmise that the Legislature intended to limit the scope of "interest" to an interest founded upon considerations of ownership, control or remuneration. Additionally, in construing "interest," we are mindful that Section 31 is a criminal statute and, as such, will be construed strictly[22] in favor of an accused state or local official to the extent that criminal liability may not be imposed for an "interest" that is merely theoretical.
Accordingly, it is our opinion that the better interpretation of "interest" as used in Section 31 is that a state legislator or a member of a city governing body where a racino is located must have a financial interest in a racetrack gaming facility or a racetrack gaming facility manager before criminal liability will attach. The fact that an organization licensee may — itself — have a financial interest in a racetrack gaming facility manager by virtue of its facility management contract is not sufficient to impute such interest to the organization licensee's board members.[23] Therefore, a board member who is a state legislator and a board member who is a member of a city governing body where a racetrack gaming facility is located do not violate Section 31 by virtue of the contractual relationship between the organization licensee and the racetrack gaming facility manager.
Sincerely,
Paul J. Morrison Attorney General
Mary Feighny Assistant Attorney General
PJM:MF:jm
[1] L. 2007, Ch. 110.
[2] K.S.A. 74-8802(y).
[3] A person or entity licensed by the Racing Commission and having a contract with an organization licensee to manage a racetrack facility. K.S.A. 74-8802(h).
[4] A person or entity licensed by the Racing Commission to construct or own a racetrack facility. K.S.A. 74-8802(i).
[5] K.S.A. 2006 Supp. 74-8810, as amended by L. 2007, Ch. 110, § 48(b). Emphasis added.
[6] L. 1987, Ch. 112, § 10. This prohibition does not apply to fair associations or horsemen's non profit organizations. K.S.A. 2006 Supp. 784-8810, as amended by L. 2007, Ch. 110, § 48(a)(2).
[7] "Financial interest" is "an interest that could result directly or indirectly in receiving a pecuniary gain or sustaining a pecuniary loss as a result of ownership or interest in a business entity or activity or as a result of a salary, gratuity or other compensation or remuneration from any person." K.S.A. 74-8802(k).
[8] Courts are to give language of statutes their commonly understood meaning. Matter of Marriage of Welliver, 254 Kan. 801 (1994).
[9] Webster's II New Riverside University Dictionary 918 (1988).
[10] L. 2007, Ch. 110, § 31.
[11] L. 2007, Ch. 110, § 31(a)(2)(C)(F).
[12] L. 2007, Ch. 110, § 1(v)(cc). A facility manager is licensed by the Commission and has a contract with an organization licensee to manage a racetrack facility. K.S.A. 74-8802(h).
[13] K.S.A. 74-8813; 74-8815; K.A.R. 112-3-11, 112-3-12.
[14] Organization licensees — other than fair associations, horsemen's non-profit organizations and non-profit organizations conducting races only on state fair grounds — can distribute net earnings only to certain 501(c)(3) organizations. K.S.A. 74-8813(d).
[15] L. 2007, Ch. 110, § 9.
[16] K.S.A. 2006 Supp. 74-8810, as amended by L. 2007, Ch. 110, § 48(a)(2). But see note 6.
[17] K.S.A. 74-8802(k).
[18] Black's Law Dictionary 828 (8th ed. 2004).
[19] 2006 S.B. 587, § 31. Minutes, Senate Federal State Affairs Committee, March 10, 14, 2006. (Emphasis added.)
[20] N.J.S.A. 52:13D-17.2 ("[n]o state officer . . . shall hold, directly or indirectly, an interest in . . . any holder of, or applicant for, a casino license. . . .") Emphasis added.
[21] N.J.S.A. 52:13D-13(g) ("`[i]nterest' means: (1) the ownership or control of more than 10% of the profits or assets of a firm . . . or more than 10% of the stock in a corporation . . . or (2) the ownership or control of more than 1% of the profits of a firm . . . or more than 1% of the stock in a corporation, which is the holder of, or an applicant for, a casino license. . . .")
[22] State v. Rupnick, 280 Kan. 720, 735 (2005) ("[c]riminal statutes must be strictly construed in favor of the accused. Any reasonable doubt about the meaning is decided in favor of anyone subjected to the criminal statute.")
[23] Organization licensee board members are also prohibited from having any business dealings, other than in their capacity as board members, with facility manager licensees. K.S.A. 2006 Supp. 74-8810, as amended by L. 2007, Ch. 110, § 48(e)(2).